## BERNSTEIN *v.* STATE OF INDIANA.

[No. 25,368. Filed March 7, 1928.]

1. INTOXICATING LIQUORS.—*Three classifications of intoxicating liquors in Prohibition Law.*—In the Prohibition Law of 1925, there are three separate classifications of intoxicating liquors, namely: (1) All malt, vinous or spirituous liquors containing as much as one-half

of 1 per cent. of alcohol by volume; (2) every other drink, mixture or preparation of like alcoholic content, patented or otherwise, reasonably likely or intended to be used as a beverage; (3) all other intoxicating beverages, drinks or preparations, whether alcoholic or not, intended for beverage purposes (§2715 Burns 1926). p. 707.

2. INTOXICATING LIQUORS.—*Indictment held insufficient to authorize proof of sales of "malt extract."*—An indictment which charged that the defendant did "unlawfully sell intoxicating liquor" to a named person would not advise the defendant that he was charged with selling "malt extract" for use as a beverage. p. 707.

3. INTOXICATING LIQUORS.—*Proof of sale of "malt extract" would not support charge of selling intoxicating liquor.*—In a prosecution for selling "intoxicating liquor," evidence that defendant had sold "malt extract," without any evidence that it was reasonably probable that the purchaser intended to use it for beverage purposes, would not support the crime with which the defendant was charged. p. 707.

4. INTOXICATING LIQUORS.—*Failure of proof to show that "malt extract" was an intoxicating liquor.*—In a prosecution for selling "intoxicating liquor," where the only evidence was that the defendant sold "malt extract," without any proof that the extract was "reasonably likely or intended to be used as a beverage" (§2715 Burns 1926), the Supreme Court could not know as a matter of law that it was within the statutory definition of intoxicating liquor. p. 708.

5. INTOXICATING LIQUORS.—*"Malt extract" may be lawfully sold for medicinal purposes but not for beverage purposes.*—If "malt extract" can be used as a medicinal tonic, its sale and use for that purpose is as lawful as the sale of any other drug which contains a like amount of alcohol, so long as its sale is not for beverage purposes (§2715 Burns 1928). p. 708.

6. INTOXICATING LIQUORS.—*Evidence held insufficient to sustain conviction for violating the Prohibition Law by selling "malt extract."*—In a prosecution for unlawfully selling "malt extract," the evidence was insufficient to sustain a conviction for selling "intoxicating liquor" where there was no evidence that such extract was reasonably likely to be used as a beverage or that it was sold or purchased for use as a beverage. p. 708.

From Marion Criminal Court (60,612); *John W. Holtzman*, Special Judge.

Morris Bernstein was convicted of selling intoxicating liquor and maintaining a liquor nuisance, and he appeals. *Reversed.*

*Chester L. Zechiel* and *Emsley W. Johnson,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *Harry L. Gause,* Deputy Attorney-General, for the State.

MARTIN, J.—Appellant was indicted in two counts, the first charging that he did "unlawfully manufacture, possess, transport, sell, barter, exchange, give away, furnish and otherwise dispose of intoxicating liquor to Charles E. Nutter," and the second charging that he maintained a common nuisance. Upon a plea of not guilty, he was tried by the court, which found him "guilty as charged," and assessed a fine and imprisonment. The error assigned is the overruling of appellant's motion for a new trial, which among other things, presents the question of whether the judgment is sustained by sufficient evidence.

Appellant was in the soft drink bottling business, and also had the agency for a certain brand of "Malt Extract" manufactured in New York. He sold the malt extract through a salesman to drug stores and groceries.

Nutter, a Federal prohibition officer, went to appellant's place of business, purchased and paid $4 for a case, (twelve bottles) of the malt extract or tonic. Nutter represented that he was in business in Kokomo. He told appellant he wanted the malt extract to sell there and ordered five more cases to be shipped to Kokomo by interurban express. Appellant testified on cross-examination, that Nutter told him he had a drug store at Kokomo, but Nutter testified as follows: "I told the defendant that I wanted to use the malt liquor in my pool room; to sell it in my cigar store and soft drink parlor as a beverage; that I had a class of trade and I knew I could get rid of it. They (appellant and his sons) said nothing in answer to my statement of the purpose I had in buying it." Nutter also testified

that he appeared before the Federal grand jury and that it refused to return any indictment.

By stipulation made in open court, it was agreed that state's Exhibit I, one of the bottles of malt extract, contained 3.4 per cent. of alcohol by volume.

The only witness for the state, other than Nutter, testified that three days after this sale he saw twenty-five cases of malt extract at appellant's place of business; that the malt extract tasted like beer, but was a little sweeter than beer; that it was not bitter, nor nauseating, but that he "could not say of the likelihood of its being used for beverage purposes."

The first count of the indictment charged possession, sale, etc., of "intoxicating liquor" (Acts 1925, ch. 48, §4, §2717 Burns 1926). The statute includes three separate classifications in its definition of intoxicating liquor: (1) All malt, vinous or spirituous liquors containing as much as one-half of one per cent. of alcohol by volume; (2) and every other drink, mixture or preparation of like alcoholic content, whether patented or not, reasonably likely or intended to be used as a beverage; (3) and all other intoxicating beverages or preparations, whether alcoholic or not, intended for beverage purposes, (Acts 1925, ch. 48, §2, §2715 Burns 1926).

It is apparent that appellant would not know from reading the indictment that he was charged with selling malt extract for use as a beverage, nor were there any circumstances alleged to advise him that it was reasonably probable that the purchaser of the malt extract was using or intended to use it for beverage purposes, and, under the rule announced in *Hedges* v. *State* (1924), 194 Ind. 122, 128, the evidence did not support the crime with which appellant was charged.

There was a failure by the state to prove that the

malt extract was "reasonably likely or intended to be used as a beverage," and we cannot say as a mat-

4.   ter of law from the mere fact that the article was kept and sold as malt extract, that it was within the statutory definition of intoxicating liquor, *Hedges* v. *State, supra,* at page 126.

But if it be conceded that the malt extract can be used as a medicinal tonic and also that it is reasonably likely or intended to be used as an alcoholic beverage,

5, 6.   its sale and use as medicinal tonic is as lawful as the sale of any other drug which contains a like amount of alcohol, while its sale for beverage purposes is as unlawful as the sale of any intoxicating liquor containing a like amount of alcohol.   The evidence here is not sufficient to prove that appellant sold the malt extract for beverage purposes, and it is clear that it was neither sold nor used for that purpose.   The prohibition agent testified that he said that he wanted to sell it to his customers, and it appears that in fact he wanted it only to use as evidence in a prosecution in the United States District Court, and, failing in that, to use in this prosecution.

The judgment is reversed, with direction to grant appellant's motion for a new trial.